IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID E. TOLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:13cv479-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under

Title XVI of the Social Security Act,  42 U.S.C. §§ 1381 et seq., alleging that he was unable

to work because of a disability.  His application was denied at the initial administrative level.

The plaintiff then requested and received a hearing before an Administrative Law Judge

("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a

"disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's

claim for benefits.  The Appeals Council rejected a subsequent request for review.  The

ALJ's decision consequently became the final decision of the Commissioner of Social

Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L.
No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to
Social Security matters were transferred to the Commissioner of Social Security.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the

United States Magistrate Judge.  The case is now before the court for review pursuant to 42

U.S.C. §§ 405 (g) and 1383(c)(3).  Based on the court's review of the record in this case and

the briefs of the parties, the court concludes that the decision of the Commissioner should

be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction.**  The plaintiff  David Tolison ("Tolison") was 39 years old on the date of onset (R. 163) and 40 years old at the time of the hearing before the ALJ.  (R. 29). He has a tenth grade education. (*Id*).  Following the hearing, the ALJ concluded that the

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

plaintiff has a single severe impairment of "borderline intellectual functioning." (R. 13). Following the hearing, the ALJ concluded that the plaintiff could return to his past relevant work as a poultry hanger and hand packager, and thus, the plaintiff was not disabled. (R. 19-20).

**B. Plaintiff's Claim.**  The plaintiff's sole issue for the Court's review is whether "[t]he ALJ's finding that the claimant does not have an impairment that meets or equals Listing 12.05(B) for mental retardation" is supported by substantial evidence. (Doc. # 15 at 5).

## IV.  Discussion

The plaintiff filed for disability benefits on May 11, 2010. (R. 128, 130).  Although the plaintiff did not allege disability due to a mental impairment, prior to the supplemental administrative hearing in December 2011, Tolison underwent a psychological evaluation. On August 16, 2011, the plaintiff was administered the Wechsler Adult Intelligence Scale - Fourth Edition (WAIS-IV) by Dr. Marnie Smith Dillon, a licensed clinical psychologist. (R. 273-77).  He obtained a verbal comprehension scale score of 63, a perceptual reasoning scale score of 58, a working memory scale score of 63, a processing speed scale score of 59, and a full scale I.Q. score of 55. (R. 277).  Dr. Dillon opined that the scores were valid and "indicative of this claimant's current level of functioning." (R. 277).  Dr. Dillon also opined that

> Mr. Tolison is *mildly impaired* in his ability to understand, remember, and carry out simple instructions.  He is *moderately impaired* in his ability to

4

understand, remember, and carry out complex instructions.  He is *mildly impaired* in his ability to respond appropriately to supervision and co-workers, and *mildly impaired* in his ability to handle work pressures in a work setting.

Claimant would not require assistance handling any awarded funds.

(*Id.*) (alteration in original)

Based on his full scale I.Q. score, the plaintiff argues he meets the Listing 12.05B, and the ALJ erred by not awarding him benefits.

Section 12.05 of the Listing of Impairments defines mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of impairment before age 22." *See* 20 C.F.R. Subpt P, App. 1, Listing 12.05. In addition, the Listing provides, in pertinent part, that a claimant is disabled if he meets the following criteria:

§ 12.05. Mental Retardation  . . .  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .

B.  A valid verbal, performance, or full scale I.Q. of 59 or less.

20 C.F.R. Subpt P, App. 1, Listing 12.05.

In this circuit, a claimant's IQ score is not conclusive evidence of a disability when it "is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  *See also Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).  Tolison argues that the ALJ must have accepted his IQ score as valid

because Dr. Dillon found it valid and the ALJ did not disagree.  (Doc. # 15 at 6).  "In this case, the Claimant's IQ score was found to be valid by Dr. Marnie Smith Dillon and presumably accepted as valid by the ALJ since the validity of the IQ was never questioned by the ALJ."  (*Id*.)  The plaintiff's argument fails because it is purely speculative.

In addition, the ALJ conducted a *Popp v. Heckler*-type analysis and concluded that Tolison did not satisfy the requirement of  Section 12.05B primarily because Tolison's IQ score was not, in and of itself, determinative of mental retardation.

> The claimant has not definitively established that he has met the requirement of any section set forth in Listing Section 12.05.  The undersigned, in conducting an analysis under Section 12.05, is not required to find that the claimant is mentally retarded based on the results of the IQ testing alone. Instead, an Administrative Law Judge is required to examine the IQ results in conjunction with other medical evidence and the claimant's daily activities and behavior.  *See Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986).  I acknowledge that the claimant underwent intelligence testing that was considered valid and obtained a full scale IQ of 55, placing him in the mild range of mental retardation.    The claimant also received a verbal comprehension IQ of 63, a perceptual reasoning IQ of 58, a working memory IQ of 63, and a performance scale IQ of 59 (Exhibit 6F).  However, Dr. Dillon also concluded that the claimant was only mildly impaired in his ability to understand, remember, and carry out simple instructions and in his ability to handle work pressures in a work setting. Dr. Dillon further opined that hte claimant would not require assistance in handling any awarded funds (despite a finding of mild mental retardation).  While the claimant informed Dr. Dillon that he completed 10th grade in special education classes, he also disclosed that he was not required to repeat any grades.  Additionally, when Dr. Dillon asked the claimant the reason he left school, the claimant revealed that he was moved around to different foster homes and that, when he was 18 years old, he had "had enough" and "got out of it."  Essentially, the claimant provided no academic-related reason for not completing high school.  The claimant further revealed that, while he had a driver's license, it had currently expired and he reportedly did not drive. Regarding employment, the claimant revealed that he was last employed at Labor Finders for approximately four months and

6

that his employment ended due to the jobs being through a temporary service. Prior to such employment, the claimant disclosed that he worked at CMB Foods as a delivery driver for one and a half years, but quit that job after a verbal altercation with the owners. Dr. Dillon's evaluation did not suggest that the claimant was terminated from his employment because he was unable to sufficiently perform his required duties, but cited other reasons not related to performance (Exhibit 6F).

In her Medical Source Statement of Ability To Do Work-Related Activities (Mental), no marked or extreme limitations were assigned upon the claimant by Dr. Dillon, who specifically commented that the claimant experienced mild limitations in coping skills associated with low cognitive functioning and anxiety symptoms. Dr. Dillon again stated that the claimant could manage benefits in his own best interest (Exhibit 7F). The record does not contain school or other documentation supportive of a conclusion that the claimant experienced significant deficits in adaptive functioning during his developmental period. Considering the entirety of the record, I conclude that the claimant's documented IQ scores are not a true estimate of his abilities. The undersigned reiterates the claimant's work history that includes earnings at the substantial gainful activity level as a delivery driver, work at the semi-skilled level. The claimant's activities reflect a higher level of functioning than his documented IQ scores suggest, and there is no objective documentation of significant deficits in adaptive functioning initially manifested during the claimant's developmental period. Therefore, I find that the record fails to support a conclusion that the claimant's impairments satisfy the requirements of any subsection of Listing Section 12.05.

(R. 16).

In this case, the ALJ concluded that the plaintiff's IQ scores are inconsistent with his daily activities and work history. Based on its review of the record, the court finds that the ALJ's conclusion that Tolison did not satisfy the requisites of 12.05B was supported by substantial evidence.

Tolison testified that he completed tenth grade of high school, but he was taking special education classes. (R. 29). However, during his consultative examination, he told

Dr. Dillon that he quit school because "I had enough and got out of it."  (R. 274).  In addition, although Tolison told Dr. Dillon that his driver's license was expired, for many years he had a valid driver's license.[4]

Tolison did not apply for, nor did he allege until the administrative hearing, disability based on sub-average intellectual functioning.  During his interview with the disability field officer on May 11, 2010, she noted that he had no difficulty reading, understanding, concentrating, talking, answering, or writing.  (R. 165).  He indicated that he could read, write and understand English.  (R. 167).  He did not indicate that he was applying for disability due to mental conditions or learning problems.  (R. 168).  Tolison indicated that he stopped working because he "[c]ouldn't get along with my boss," not because of his impairment.  (R. 169).  In describing his daily activities, Tolison indicated that he prepares all his own food, does household chores, shops for himself, pays his bills, handles a savings account and uses a checkbook.  (R. 198-99).  He cares for animals and his own personal hygiene.  (R. 196).  He also stated that he can pay attention "every time" and he follows written instructions "every time."  (R. 193).

Furthermore, and perhaps more importantly, the record does not indicate, and Tolison does not allege, that his borderline intellectual functioning significantly impairs his ability to work.  Tolison conceded that he could read and write.  During his application process, the

---

[4] Tolison testified that from 2007 until 2009 he drove a delivery trick for C&B Foods.  (R. 29-30).  As early as 1998 and 1999, Tolison worked for C&C Auto Enterprises picking up and delivering vehicles.  (R. 34).

disability field agent noted no difficulty reading, understanding, concentrating, or writing. He passed the written driving test. He was able to care for himself and animals. Finally, he manages his finances, and Dr. Dillon opined that he was capable of managing any awarded benefits. Given this evidence, the court concludes that the ALJ's determination that Tolison's intellectual deficiencies did not significantly impair his ability to work, and thus, Tolison did not satisfy the requirements of section 12.05 was supported by substantial evidence.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery*, *supra.* The ALJ's findings meet the reasonableness standard.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. Thus, this case will be dismissed with prejudice.

A separate order will issue.

Done this 13th day of February, 2014.


                    /s/Charles S. Coody
                    CHARLES S. COODY
                    UNITED STATES MAGISTRATE JUDGE